**ROUTED THRU–PAC, INC., Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

United States District Court
S. D. New York.

June 14, 1965.

———◆———

Polakoff & Polakoff, New York City, Milton E. Polakoff, New York City, for plaintiff, Haffer & Beckman, Louis P.

Haffer and Robert M. Beckman, Washington, D. C., of counsel.

Robert M. Morgenthau, U. S. Atty., for the Southern District of New York, Seymour Glanzer and Donald F. Billett, for the I. C. C.

Before KAUFMAN, Circuit Judge, and FEINBERG and TENNEY, District Judges.

FEINBERG, District Judge.

Plaintiff Routed Thru-Pac, Inc. ("Thru-Pac") seeks an injunction requiring defendant Interstate Commerce Commission ("ICC") to issue an "authorization" enabling it "to continue as an eligible forwarder of household goods of Department of Defense personnel"[1] and restraining the ICC from any enforcement action against plaintiff for operating without ICC authorization. Plaintiff also requests a temporary restraining order giving it this relief pending determination of its application for a preliminary injunction. The application was heard by a three-judge court pursuant to 28 U.S.C. §§ 2284, 2321–2325.[2]

Since October 1959, Thru-Pac has been engaged in the forwarding of used furniture, personal effects, unaccompanied baggage and used automobiles. Used automobiles are forwarded both separately and in connection with the forwarding of furniture and personal effects of a household. On October 6, 1964, the ICC issued its opinion and order in Bekins Household Shipping Co., Hawaii "Grandfather" Application, 323 I.C.C. 382 (1964), holding that (1) the forwarding of used automobiles independently of and not in connection with the furniture and personal effects of a householder does not come within the exemption of section 402 (b) (2) of the Interstate Commerce Act ("the Act"), 56 Stat. 284, as amended,

1. Complaint, pp. 7, 8.

2. The ICC did not oppose plaintiff's request for a three-judge court. Therefore, the question was not pressed whether the standard for convening such a court is the same when an ICC order is questioned under 28 U.S.C. §§ 2321– 2325 as it is when the constitutionality of a statute is attacked under 28 U.S.C. §§ 2281–84. See North Carolina Natural Gas Corp. v. United States, 200 F.Supp. 740 (D.Del.1961), indicating that the standard is the same.

49 U.S.C. § 1002(b),[3] and (2) a permit, issued by the ICC, is required for such forwarder's *entire* service, pursuant to section 410 of the Act, 56 Stat. 291, as amended, 49 U.S.C. § 1010.

On February 26, 1965, the Department of Defense, through the Military Traffic Management and Terminal Service of the Army, advised Thru-Pac that "the transportation of household goods of Department of Defense personnel within CONUS [continental United States] and Alaska will in the future [after April 1, 1965] be performed only by carriers holding effective certificates or permits issued by the appropriate U.S. regulatory agency authorizing the performance of such service." [4]  On March 3, 1965, Thru-Pac filed a petition with the ICC for a permit.  This application is still pending, and a hearing upon it is scheduled for June 29, 1965.[5]

On March 29, 1965, Thru-Pac filed another petition with the ICC styled "Petition for an Order Under Section 9(b) of the Administrative Procedure Act." This petition was supplemented by a letter dated March 31, 1965.  In this petition, Thru-Pac asserted that it had been forwarding used automobiles independently of "used household goods" in the honest belief that this service was included within the "used household goods" exemption of section 402(b) (2) of the Act; that the *Bekins* decision held for the first time that such service was not included within the statutory exemption and further held that a permit was re-

quired for the entire forwarding service; that *Bekins* constituted a reversal or at least a clarification of the ICC's prior interpretation of the "used household goods" exemption of section 402(b) (2); and that the action made illegal services which were previously lawful, thus constituting a "withdrawal, suspension, revocation, or annulment" of Thru-Pac's statutory exemption without giving Thru-Pac the opportunity to achieve compliance with all lawful requirements as required by section 9(b) of the Administrative Procedure Act ("APA"), 60 Stat. 242, 5 U.S.C. § 1008(b).[6]  Thru-Pac requested the ICC to affirm by order that Thru-Pac had authority to continue its service pending final action on its March 3, 1965 petition.  In its March 29, 1965 petition, Thru-Pac admitted that it would have no need to request an order confirming its authority to continue its existing service except for "extraordinary circumstances."  These were alleged principally to be the change in Department of Defense policy referred to above, and the irreparable effect in lost business this would have on Thru-Pac.[7]  The petition also pointed out that there was a total of fifty shipments of used automobiles by Thru-Pac in 1964, of which twenty-three were not accompanied by household effects.[8]

On April 12, 1965, the ICC denied the March 29, 1965 petition.  The ICC held, *inter alia*, that *Bekins* was consistent with prior interpretation and thus did not constitute a withdrawal of a license and that any loss of business suffered by

---

3. Section 402(b) (2) provides, in part:
   "The provisions of this chapter shall not apply * * * (2) where the property with respect to which service is performed consists of * * * used household goods * * *."

4. Complaint, Appendix A.

5. A hearing had been fixed by the ICC for June 14, 1965, but was postponed at Thru-Pac's request until June 29, 1965.

6. Section 9(b) provides, in part:
   "Except in cases of willfulness or those in which public health, interest, or safety requires otherwise, no withdrawal, suspension, revocation, or an-

nulment of any license shall be lawful unless * * * the licensee shall have been accorded opportunity to demonstrate or achieve compliance with all lawful requirements.  In any case in which the licensee has, in accordance with agency rules, made timely and sufficient application for a renewal or a new license, no license with reference to any activity of a continuing nature shall expire until such application shall have been finally determined by the agency. * * *"

7. Complaint, Appendix B, pp. 2–3, 12.

8. Ibid.

plaintiff was the result solely of a change in policy by its principal customer, the Department of Defense.

On April 30, 1965, Thru-Pac filed its complaint in this court making essentially the same contentions here as it had in its March 29, 1965 petition to the ICC pointing out that its gross annual volume is approximately $5,500,000, of which $3,500,000 comes from forwarding done for Department of Defense personnel.[9] Thereafter, however, Thru-Pac in this court minimized the importance of the loss of business with Department of Defense personnel. Thus, it now describes the potential loss from this source as only "5% of its gross business"[10] and asserts that "the prospective loss of commercial customers" is more significant.[11] This latter claim of threatened irreparable injury is nowhere mentioned in the complaint in this court.

The basic relief plaintiff seeks at this time is a writ of mandamus requiring the ICC to issue a highly unusual "temporary" license to conduct operations while plaintiff's formal application for a permit is processed and determined. The heart of Thru-Pac's case is that the *Bekins* case was a complete switch from the ICC's previous position. From this, Thru-Pac argues that a previously recognized exemption from regulation (which plaintiff equates with a previously recognized "license") has been "withdrawn" within the meaning of section 9(b) of the APA. However, the cases make quite clear that there was no sudden switch by the ICC. As far back as 1943, the ICC had raised a red flag for anyone transporting used automobiles independently of used household goods. In Trans-American Van Serv., Inc., Freight Forwarder Application, 260 I.C.C. 52 (1943), the ICC held that a forwarder of used automobiles in connection with furniture and personal effects of a householder is exempt from regulation under section 402

(b) (2) of the Act. However, it went on to say (260 I.C.C. at 54):

> Our ruling herein made is confined to the facts of this particular case, and we must not be understood as holding that office furniture and equipment and used automobiles, when transported alone, are household goods within the meaning of the exemption.

In Empire Freight Co., Freight Forwarder Application, 265 I.C.C. 109 (1947), the ICC made good on its warning and held that carload shipments of used automobiles not part of shipments of used household goods were not exempt under section 402(b) (2). In Ace Freight Forwarding Co., Freight Forwarder Application, 310 I.C.C. 385 (1960), the ICC reaffirmed that shipments of automobiles in connection with forwarding of furniture and personal effects of a householder were exempt, even though the householder's effects included more than one used automobile. Finally, in *Bekins*, the ICC reaffirmed the other side of the equation—that a shipment of an automobile independently of used household goods is not exempt, even though only one automobile is involved.

It is simply incorrect to find from this line of cases the sudden change in position Thru-Pac attributes to the ICC. At most it can be said that the precise issue of the status of an independent shipment of one automobile had not been squarely raised before *Bekins*. But the direction the ICC would take on this question was reasonably clear. However sincere may have been Thru-Pac's belief that such shipments were not subject to regulation, the ICC cannot in fairness be characterized as, in effect, misleading or confusing plaintiff. Plaintiff alleges no request for advice from the ICC, formally or informally, at any time. Plaintiff relies on Merrifield Common Carrier Application, 61 M.C.C. 103 (1952). But in that case, the ICC recognized that several prior

---

9. E. g., complaint, para. 7; affidavit of Donald E. Hilliard, sworn to April 30, 1965, p. 2.

10. Supplemental affidavit of Donald E. Hilliard, sworn to June 3, 1965, p. 5.

11. Ibid.

ICC decisions established a basis for Merrifield's operation without a license prior to a definitive ICC ruling that one was required. Plaintiff also points to Movers' & Warehousemen's Ass'n, Petition for Declaratory Order, 304 I.C.C. 517 (1958) as recognition by the ICC of the "substantial uncertainties" on the issue. However, in that case the ICC did not deal with the question raised here.

Since the main premise of plaintiff's case is wrong, its application must be denied. However, it should be noted that plaintiff comes nowhere near sustaining its burden of proof of showing irreparable injury. No real evidence of threatened loss of commercial contracts has been adduced. In the year 1964, there were only twenty-three shipments of the sort prohibited without a permit, hardly an overpowering number compared to an estimated total of over 12,000 shipments of all used household goods.[12] Moreover, whatever speculative loss of business plaintiff faces is only for a limited time. Plaintiff concedes that it must eventually have a permit from the ICC if it wants to continue to do business as it has, and ICC proceedings to obtain that relief are expected to be completed by approximately the end of the year. In addition, the threat of enforcement proceedings against it by the ICC, which up to now has been illusory, can be eliminated for the future by temporarily stopping the prohibited type of shipments, while continuing the rest of its business. Finally, and perhaps most significantly in view of the allegations of the complaint upon which the motion for a preliminary injunction is based, plaintiff now claims that the loss of the Department of Defense business is not its principal concern. But even if it were, it does not allege that the ICC is in any way responsible for that. Moreover, there is no showing that a temporary "authorization" not amounting to a formal permanent permit would satisfy the Department of Defense.

Accordingly, the request for a temporary restraining order and the motion for a preliminary injunction are both denied. The above incorporates the findings of fact and conclusions of law of this three-judge court.

12. The basis for the estimate of 12,000 is that for the six-month period from May 1, 1964 to October 31, 1964, there were over 6,000 shipments. Supplemental affidavit of Donald E. Hilliard, sworn to June 3, 1965.